The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. We will hear argument first in 19-1828 in Re Google Technology Holdings. Ms. Cagli. Good morning, Your Honors, and may it please the court. My name is Catherine Cagli. I'm here on behalf of Google Technology Holdings to present what is a quintessential claim construction dispute. Google defined a claim terminate specification. Ms. Cagli, this is just Toronto. Can I ask a preliminary question? Assume, just for purposes of this question, that we were to affirm here. Would Google be able to file a new claim or claims containing the language you argue for as a matter of claim construction here either in this application or a continuation application? Your Honor, no current continuations are pending in this chain. This is the last application in this chain. Whether or not we could file a continuation upon affirmation and remand, that's something I would have to defer to prosecution counsel for. But I believe it's possible that a continuation could be filed after the fact. This application remains pending, is that right? This application, again, I would defer to prosecution counsel, but this application is pending. It's the last application in the chain. If this court were to affirm and remand, my understanding is that a continuation could be filed before the mandate. Okay, let me ask you then, turning to the merits, although not quite the merits of the claim construction itself. Is your understanding that the, let's call it the passed upon principle of LeBron and Williams says only that the court may decide an issue that was passed upon, even if not quite argued? It doesn't say that we are obliged to. And if that's your understanding, why is this a case in which we should? Your Honor, I would respectfully push back against that understanding. I think that while Williams' phrase in the permissive sense in Supreme Court certiorari, so cases like this court in Conoco make clear that when the decision below rests on a legal principle, when a legal issue is passed upon and forms the foundation of the lower tribunal's decision, that decision must be reviewed on appeal because it's the foundation of the opinion and a pure legal issue. So I think the context, even though Williams phrases it in the permissive, this court has applied it, and many circuit courts have applied it to require passing on legal issues that form the basis of the opinion below. So turning then to the merits of the claim construction argument, if I could, I think it's clear from Google specification in paragraph 67 that Google has clearly defined the term cost to refer to a bottleneck link. Ms. Kiley, this is Judge Chen. The term in the claim is content source cost, and I was wondering, is that term, that phrase used anywhere in the specification, in the written description, other than in the claim? Content source cost. No, Your Honor, I don't believe it is. But I think it's unambiguous in the context of the claim that that content source cost refers to the cost, again, as the claim language continues, of retrieving the content from a second content source or a third content source. That problem is unambiguously addressed in the specification under the pure choice rubric of how to determine from where to source content. Are you talking about the bottleneck link discussion? Yes, Your Honor. Just curious, I believe you have some patents that have issued already off of this written description. Is that right? That's right, yes. Do you have any claims in those patents that use the term bottleneck link? We do not, Your Honor. No use of the term bottleneck in the claims. There are claims that refer to costs based on traffic, which is predicted to occur over a most utilized link. But I would suggest that most utilized is not synonymous with bottleneck. And just curious, while we're at this housekeeping point, are there any claims that use the term fetch cost? Your Honor, that's an answer I don't know off the top of my head. My recollection is that they do not. But I would need to confirm that. And finally, I'm sorry, just out of curiosity, why is this case captioned In Re Google instead of In Re Name of Inventors? Sure, that's a new feature of the AIA that allows corporations actually to be patent applicants. And so in this instance, the applicant is Google Technology Holding. Ah, thank you. Okay, please continue. Sure, Your Honor. So I'm turning again to paragraph 67, which refers to the definition of cost as that term is used in the claims here. Paragraph 67 explains that the cost of the path is defined by the bottleneck link in that path, which is the link that takes the longest to transfer item I. The bottleneck link in the path obviously refers to the path connecting the source of the content to the user. So it's unambiguous in paragraph 67, which is addressed under the heading of pure choice, that when choosing among different sources, you identify the source with what the specification calls in paragraph 68, the largest bottleneck link. I would suggest that what that's intended to mean is the least problematic bottleneck link. So the way that the specification directs one to choose how to source content is by identifying the source with the path to the user that has the least problematic bottleneck. Respectfully, Your Honor, that is in direct conflict with the construction that the board offered under the guise of broadest reasonable interpretation. The board offered a construction that in essence said cost encompasses everything taught by the prior art. Cost encompasses everything taught by Costa, which was one reference alternative. Cost encompasses everything taught by Scholl, the second reference that the examiner relied upon. And that means that cost includes everything up to and including monetary value, a concept completely divorced from the manner in which the term cost is used here. I think it's clear that when applying the definition of cost as used in paragraph 67, the board has not identified, and neither has the examiner, any reference that discloses that cost. Because the lexicographical definition of the term has to control, the board's construction is not only impermissible, but results in a legally erroneous obvious misconclusion. Can I just add to that, Ms. Caley? You used the phrase most problematic or least problematic. Is that the same as that takes the longest to transfer? Yes, Your Honor. I think in the concept of the specification, for instance, in paragraph 68 that describes the largest bottleneck length, I think largest is what is intended there is takes the least time is the largest bottleneck length. The smallest bottleneck length is the one that takes the longest to transfer the item. Hopefully that distinction makes sense. I refer to least problematic so as just to not create any ambiguity between whether a bottleneck that's low is large or small. Okay, but you weren't trying to embed some notions of, I don't know, unreliability because of channel noise in that. I would not, no, Your Honor. Okay. I'm referring simply to a determination of which length is the bottleneck and therefore which length takes the longest to transfer the item. Ms. Caley, this is Judge Chen again. I noticed that in the claim when it refers to content source cost, it also says based on network impact, quote, unquote, and I was trying to think about what does that mean in relation to your preferred definition. Your preferred definition seems to be thinking about cost in the perspective of speed of delivery of the content and based on network impact could be understood as, well, looking from the perspective of the network itself, not the speed of the delivery of the content but the harm or burden on the network, and so I was wondering how does this term based on network impact help your cause in forcing us to think about content source cost as really from the perspective of the speed of the delivery of the content to the customer? Yes, Your Honor. So I would suggest especially that Google's definition is not one that's limited to the speed of the transfer of the content because it may be that the fastest path is not the one with the smallest or the least problematic bottleneck length. For instance, it might make sense to travel a longer distance and longer in time as well if you avoid hitting a bottleneck that not only could delay your transfer but might impede the transfer of other content as well. The same idea that if you pile more cars onto 66, not only are you slowing down your commute, but you're slowing down everyone else's, and of course the network. I'm sorry, but how do you get that out of the middle sentence of paragraph 67, which seems to focus just on what's longest to transfer a particular item? Or a particular link. Oh, Your Honor, I see I'm in my rebuttal time. I'm happy to answer your question with the panel's permission. Yes, please. So the difference here is that there may be multiple links in a path. So while an individual link might be slowest in a path, it might be faster than the slowest link in a different path. And so you choose the path that has the least slow, slowest link, the fastest, slowest link. And by doing so, that's the direction to choose the one that has the largest bottleneck link. And by doing so, you're avoiding exacerbating the existing bottlenecks in the system that might already be congested with link traffic. Do you want to say a word about network penalty? And then we'll keep your rebuttal time. Thank you, Your Honor. Yes, if we turn to network penalty, I think the definition and the specification is crystal clear. That it begins definition, colon, network penalty. And it provides a formula that's based on much of Google's ability to compute, use network. Ms. Kiley, I'm sorry, this is Judge Chen again. I know you're running out of time here. Could you just point me to a sentence in your board brief that gives me a clue and a signal that the board should have recognized it was looking at a preferred construction of the term network penalty as advanced by Google? What sentence would that be in your board brief? Your Honor, I can't point you to where we disclosed the construction. I can see that. But I think that this construction is certainly consistent with the manner in which we interpreted the claim below, which is to say that simply understanding that the size of content matters, that the distance content needs to travel matters, is not sufficient to reach the formula that's disclosed in paragraph 80. And this is Judge Toronto. Let me just ask you one question on the merits of this construction. If we're doing a BRI interpretation, the question perhaps is, would a relevant skilled artisan understand that the language of the claim, which refers only to two of the three factors in the specification formula, is not actually being redefined by that specification formula? And because of the choices, do I read that formula as essentially an embodiment formula or as a redefinition? And because there's a disparity between the claim language, a quite noticeable disparity of leaving out the fetch cost, one reasonable reading by a relevant skilled artisan would be to view the formula as not a redefinition, but rather as describing an embodiment. Your Honor, I understand the claim language you're pointing to, and we would submit that this definition is clear on its face, but it's not limited to a single embodiment, and that, in fact, while the claim language is entirely consistent with paragraph 80, although it does not mention the fetch cost, the definition of network penalty imports the use of fetch cost into the claim by virtue of the defined claim term. Okay. I think we should hear from the other side, and you'll have your full five minutes for rebuttal. Thank you. Thank you, Your Honor. Mr. Kasnick. May it please the Court. I want to pick up where Your Honor just left off in the call for you with my friend, and the question about network impact. I want to point out that it's not just – Judge Chen asked about whether any of the claims mentioned fetch cost, and Claim 10 I think is actually very illustrative here if you look on Appendix 18, and so – or over onto 19. And it says the network penalty is based on size, number of requests, and fetch cost. So some of the claims actually expressly talk about network penalty in the context of fetch cost. But Claim 1 does not. It only mentions two out of the three, Judge Duranto's point. So I think that this sort of gets at the point, which is that the claims seem to be redefining it, and different claims are using the term differently, which the contrast between the language of Claim 10 and Claim 1. And there are other claims that also expressly talk about network penalty in terms of fetch cost like Claim 18. So I think that it does – there's at least a question about what this means, and so under BRI I think the Board rightly was – if the Board had been asked to do it, it would have been right to say that there's a potential redefinition. But I think this whole case, and just sort of now back to the beginning, is this is a case where Google is arguing for lexicography, and this court has repeatedly talked about the fact that lexicography is an exception. So if you want to tell the Board that you – if you think a word has a special meaning, that you've given it a meaning different than its normal meaning,  and if you don't, then you tacitly agree. And I think that the notion of the tacit agreement, I think that was actually something that Google said in describing Nouveau, but I think that's an accurate description of where the court should be going for addressing issues that weren't raised by the parties but are decided by the lower tribunal and where it shouldn't. So in Clariat, the Sixth Circuit case, the court says that it's unfair. If you didn't even know something would be an issue, and then the district court or trial court decided it against you, it's unfair if you don't get a chance to rebut that. So for example, if the fact had been reversed, if the Board for the first time had said we're going to apply lexicography where nobody mentioned lexicography before, it'd be fair for the appellant to say, look, we didn't know that anybody thought that this term has a special meaning. But that's the opposite of our fact. Here, the Board just did what the default rule is, and Google wants the exception. If it wants an exception, it has to say it. And if it doesn't, it's passively accepting that the word will have the normal meaning. Mr. Kessin, this is Judge Taranto. Do you have an answer to the first question I asked Ms. Kayali about whether new claims containing express language with the now-urged construction could still be filed? So I think they would run – so this is – the MPEP notes, and it's not – that there's conflicting case law a little bit on the scope of res judicata from one prosecution to another. I think the better read is that if they have the same claims, there would be res judicata, but I think there is a Judge Rich opinion where he says if you change the record, you can have the same claims and have new arguments. But I think more we can figure out. No, no, no, I'm sorry. I don't think I've asked my question. Let's take the proposed claim construction, a bottleneck link construction. Let's imagine a claim with those words in it. And similarly for network penalty, words that copy the relevant paragraph with the formula. So now we have new claims, new language in claims. Could Google file such claims either in this application or in a continuation? I apologize, Your Honor. You're right. I did misunderstand the question. Yes. Until the mandate issues, Google can file a continuation of this application and say, we're going to amend the claims and we're going to just put exactly the words. So a lot, as you know from the briefs, one of the questions is whether content source cost means cost of the path, let's say. We disagree about that. If they put in cost of the path, they've got to pass that issue, right? And they can still file a continuation. Now, if they don't have a live continuation, and my friend said that they don't, then once the mandate issues, the MPP says that we cannot, the USPTO can no longer continue prosecution. But until then, they can file a continuation. So they could do that today, file the continuation, preserve the issue, and then file the claims where there's no claim construction issue because the claims say expressly what they mean. I guess one reason I've asked the question is that the passed upon rule is a rule of, you know, quite general potential of a scope, not particularly tied to this context, patent application context. And I wonder if whether it should be applied might be affected by the availability of a curative option on the part of the litigant, one that also happens to serve the important patent policy of having content as much as possible on the face of the claims. Yeah. So I think that that makes sense to me. And this is sort of why BRI exists is the policy of this Court as long as spouse, which is just make it clearer, everybody will know, and that life will be easier for everyone involved. And I think that that's a good reason to say that we're not, this isn't an estoppel that's going to bar you from doing anything that you want the way it would in a district court where you have to pay money damages. Just draft claims that don't have this issue and then we can move on and the whole claim construction issue can go away and we can talk about the merits. I think that's right, Your Honor. Mr. Cosden, just to be clear, I thought I had heard you earlier say that if the facts were in reverse, then you would think it would be appropriate for us to consider the claim construction issue here. That is to say, if the board surprised everybody by engaging in some kind of lexicography analysis that had been unexpected and therefore the appellant in that instance would say, no, I want the broadest reasonable interpretation, and you're now surprising all of us by incorporating the specification into the claim. Yes. So two points. One, I hadn't thought about Judge Toronto's point at the time. But the other one is that sometimes if you want the plain language of the claim, it may be hard to write your claims in the way, like the words you may want to use based on your specification may be the words you've chosen. And if there's no lexicography, then it seems unfair that you can, you never have a chance to say there is no lexicography. So in that sense, I think, if the facts were reversed, I'd have more sympathy for an appellant to say that I've been surprised and I don't feel like I should have to use some clunky term, which then might run into description problems because people will say, well, that's not in the spec or something. So if they've chosen the best terms. Hi, this is Judge Stoll. I just had one quick question on your answer there, which is simply that do you think that in this hypothetical that you posed where the board has a new claim construction that it never announced before, would that be something that would require reopening prosecution? Would that then become kind of a new ground at that point that was provided by the board for the first time? Well, so this court has some case law. I mean, it's very hard to tell. It depends a little bit on how surprising it is. So this court has said sometimes there could be a due process problem, although this court has said that the ability to petition for rehearing might be enough to get past that. But it will depend, I think, on how different the construction the board does is from the construction that you have. And so it may be fact specific about whether the new construction requires reopening. Under Chenery, I think this court also can say, look, clearly this construction is right or isn't right, and clearly there's no substantial evidence could only support one conclusion. So I feel like it will depend on the specifics of the facts. So maybe I opened up more of a can of worms than I intended to with the hypothetical. But I think it would depend on the specific case on how surprising is the board's decision, how far afield this is. On the waiver issue, do you see any difference here given that this was an ex-party case and the examiner had presented a prima facie case of unpatentability? Do you think that it makes a difference in an ex-party case that somehow there'd be some incentive for a party to provide its claim construction positions and distinguishing the prior art as soon as possible, either before the examiner or the board? Yes. I think even in an inter-party, this is true, but it's really unfair to the examiner to suddenly, I mean, it's really unfair to the whole USPTO, right? The board also didn't have any briefing on this issue. For Google to come in and say this whole case should turn on a claim construction that nobody mentioned. And in this court it said in ex-party cases, for example, secondary considerations, the burden of production, I think is shifted to the party. So we do account for the fact that the examiners have limited time and we sort of expect the applicants to bring forth their arguments more clearly than in inter-party cases. So I think that's correct, Your Honor. So I'm happy to answer other questions, but I do feel like this case really should be decided on waiver. I think that the multi-step claim construction argument of content source cost equals cost of the path equals bottleneck link is difficult, both because it's not clear. Both steps are difficult because, as we point out in our brief, the end of the specification suggests that even cost of the path may have multiple definitions. And then the same thing goes for the network penalty, where you have a sort of, you have a waived argument, and at the highest cost, there are solid claim construction questions about what you do about balancing the language of the claims, but claim two, which doesn't mention fetch costs, and 10 does versus the definition that seems to. And so given that, this court really, Google needed to present that in the first instance to the board. I'm happy to answer any other questions, but if not, I will cede back my time. Hearing no other questions, thank you. And Ms. Cagli, you have five minutes for your rebuttal. Thank you, Your Honor. I'd like to return to the waiver issue briefly to say that this court in Conoco explicitly held that where a district court had construed a term that neither party had sought construction of below, this court must review that construction de novo. I agree that that's different language than that is espoused in Williams, but this language of Conoco is not permissive. Secondly, I don't think there's any support for my friend on the other side's suggestion that if the situation were reversed, if the board had come up with a lexicographical definition in the first instance, that the situation should turn out differently. Candidly, Google was surprised by this construction. Ms. Cagli, could you explain how Google could have been surprised by this conception of content source costs articulated by the board? I mean, I don't see anything here that suggests that what the board said was a harsh departure from what could have been or necessarily was understood by the examiner and Google's counsel during the prosecution. Yes, Your Honor. We have explicitly defined the claim term in the specification, and when the examiner rejected our claims on basis of prior art, for example, the Shoal reference, which relates to proximity-based determination, we repeatedly said, no, Shoal is proximity. Shoal is proximity. This is not content source cost. And I think in that back and forth with the examiner, our understanding was that we were applying the definition of content source cost that we had espoused in the specification. So to see a different definition of content source cost, one that's untethered from the language of the specification, that's untethered from the context of the claim, that goes so far as to include monetary value, was a surprise, because no one in the conversations with the examiner or the discussion of the prior art had understood the scope of that term to be so broad. And I think it was telling that in the board's decision, not only did it offer construction of cost, but what it said right before it offered that explicit construction was, we construe cost to mean everything that Costa discloses and Shoal discloses. So it was a claim construction effort that really was intended to wipe away all of the discussion of the prior art and fold that into a decision that the term cost was broad enough to include whatever it was that Costa and Shoal disclosed. So that was a surprise to Google. I don't think there's any Federal Circuit precedent for the idea that if the situation were reversed, that the situation should turn out differently. Moreover, while we may be able to file a claim before the mandate issues, we are here on the fact that they're presented, and we believe that the terms as we have used them in our claims currently sufficiently import the definitions from the specification. It's quite clear in context what cost is being discussed in the claims, and that cost has a clear definition in its claim term. I don't think there's any distinction between this case and the Conoco case, and I would respectfully urge the court to consider its claim construction, sorry, to review the lower tribunal's claim construction under the Conoco rule. With that, I would say only that Google respectfully requests vacator of the board's affirmance of the examiner's final rejection, which would send the application back for further prosecution. This is Judge Chen. I just have a quick observation. Ms. Cagliari, I thought your briefs were expertly done here, and I only wish your client had given your prosecution counsel as much time to write the board briefs as you clearly put into these nicely done briefs. Thanks. Well, Judge Chen, I thank you, and I appreciate the compliment. Thank you to both counsel, and the case is submitted.